+The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 7 |
| JEFFERY ALLAN WALLACE | ) |
| | ) CASE NO. 08-63006 |
| Debtor. | ) |
| | ) ADV. NO. 09-6055 |
| _____ | ) |
| | ) |
| DANIEL M. MCDERMOTT | ) JUDGE RUSS KENDIG |
| UNITED STATES TRUSTEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JEFFERY ALLEN WALLACE | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |
| Defendant | ) |

On April 8, 2010, the United States Trustee ("UST") filed a complaint objecting to the discharge of debtor Jeffery Allen Wallace ("debtor") pursuant to 11 U.S.C. § 727(a)(2), (3) and (4). A hearing was held on May 10, 2010, and a further hearing was held on May 20, 2010. Chris G. Manos represented the debtor, and Lenore Kleinman represented the UST. The UST's motion is now before the court.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding

under 28 U.S.C. § 157(b)(2)(A), (J) and (O). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## BACKGROUND

Debtor was a professional pitcher in the major leagues. From 1997 to 2002 he played for the Pittsburgh Pirates, the Tampa Bay Devil Rays, and the Boston Red Sox. Despite debtor's protestations during his meeting of the creditors that he was a "nobody left hand reliever," it is clear that by the end of the 2001 season his star was on the rise. His fastball had been clocked at 101 miles per hour and he was good enough to retire Barry Bonds on twelve out of twelve occasions striking him out five times. Following the 2001 season, he signed a $400,000 one-year contract with the Red Sox.

His playing career ended early in the 2002 season when his elbow required Tommy John surgery, and the money did not last. The debtor testified at his meeting of creditors that at the time he left professional baseball he was leasing a Lincoln Navigator, a Chevrolet Suburban, a Chevrolet Corvette and was making condo payments in addition to his mortgage payment. Sometime after the end of his baseball career, the debtor began selling cars at Laverly Chevrolet in Alliance, Ohio to make ends meet. He earned between $30,000 and $35,000 per year, and he disliked the work.

Sometime in 2006, the debtor met William T. Tolerton while their sons were playing in the same football league. Mr. Tolerton is a business man who owns the group of companies known as Terry's Tire Town. At the time, Mr. Tolerton owned a warehouse in Alliance, Ohio that he was no longer using for his tire business and that he was thinking about converting into a baseball training academy. In the debtor, Mr. Tolerton saw someone who could run the day-to-day operations of his baseball academy. In Mr. Tolerton, the debtor saw a way to get out of the car business and return to baseball.

In October 2005, the baseball academy opened in Mr. Tolerton's warehouse. On November 17, 2005, the two men formalized their business arrangement by forming Professional Baseball Academy, LLC ("Academy"). The operating agreement provided that Mr. Tolerton and the debtor would each be 50% owners of the Academy and provided that the debtor would receive an annual salary of $35,000 for his role as the Academy's day-to-day manager. Meanwhile, Mr. Tolerton would provide business expertise and accounting services through Terry's Tire Town.

On January 31, 2006, the Academy entered into two business loan agreements with FirstMerit Bank, LLC in the principal amount $125,000. Both the debtor and Mr. Tolerton personally guaranteed these loans, and the loans were secured by substantially all of the assets of

2

the Academy. The proceeds of the loans were used to finance the purchase of equipment, buy inventory for the pro shop, and finance day-to-day operations of the Academy.

At some point, Mr. Tolerton began to suspect that the debtor was stealing money from the Academy. He testified that in mid-2007 the debtor lost his ATM privileges after making improper charges in connection with the debtor's side business as a youth baseball coach. In April 2008, Mr. Tolerton testified that the accountant at Terry's Tire Town, Rene Boshine, conducted an inventory of the Academy's pro shop. The inventory revealed that $26,000 in merchandise was missing. Mr. Tolerton testified that he accused the debtor of selling the inventory and pocketing the proceeds.

According to Mr. Tolerton, he asked the debtor to pay him $150,000 to settle the matter and end the business relationship, and the debtor agreed. However, payment was not forthcoming. As a result, Mr. Tolerton contacted the Stark County Prosecutor's office, which recommended that Mr. Tolerton employ a forensic accountant to establish grounds for a criminal prosecution.[1] As a result, Mr. Tolerton employed Frank Monaco, CPA to compute the damages caused by the debtor's alleged conversion of funds.

On November 10, 2009, Mr. Monaco submitted his completed report. He confirmed that approximately $28,000 in inventory shrinkage had occurred. In addition, Mr. Monaco identified $12,190 dollars in ATM and counter check withdrawals without any clear business purpose. At hearing, he testified that all but two of the suspicious counter checks were signed by the debtor. Furthermore, he testified that the apparent counter check fraud began only after the debtor lost access to the business ATM card. Mr. Monaco also completed a supplemental report in which he compared the appointment book for scheduled baseball lessons to lessons actually invoiced for January and February 2008. He found a total discrepancy of $23,100, which he described in the supplemental report as "very large . . . for a two month period of time."

Finally, Mr. Tolerton testified that he discovered an apparently fraudulent bank account when his attorney subpoenaed the debtor's bank records sometime in 2009. The account is in the name of "Jeffery A Wallace DBA: Professional B" ("DBA account"). At hearing, the UST submitted banking records that show suspicious deposits into this account. On February 26, 2008, six checks totaling $2,100 were deposited into the account. On April 5, 2008, four checks totaling $1,400 were deposited, and, on April 7, 2008, twelve checks totaling $1,550 were deposited. The checks were written on the accounts of individuals and families living in the Stark County area and were made out to the Academy.

At hearing, the debtor admitted that he had a side business coaching a baseball team and admitted that he lost ATM privileges. However, he denied improper use of the ATM card. Rather, he explained that he lost ATM privileges because Mr. Tolerton wanted more internal control in the face of mounting business losses. The debtor also denied stealing inventory. He

---

[1]The criminal prosecution was eventually "no billed" by a Stark County grand jury.

3

pointed out that other employees had access to the pro shop. He also claimed that Mr. Tolerton removed inventory from the pro shop to outfit the youth baseball teams that Terry's Tire Town sponsored.

In addition, the debtor denied that he failed to invoice lessons scheduled in the appointment book. In cross-examination, Mr. Monaco admitted that he could not be absolutely sure that the debtor failed to invoice lessons without knowing which customers might have no-showed. The debtor gave inconsistent testimony regarding the DBA account. When the UST initially asked him to explain the $2,100 deposit, he replied that it was probably help from family members. However, when the UST pointed out the canceled checks made out to the Academy, the debtor explained that he was confused and that he was not familiar with the DBA account.

On June 9, 2008, Mr. Tolerton and the Academy filed a lawsuit against the debtor in the Court of Common Pleas in Stark County, Ohio. The complaint alleged embezzlement, breach of fiduciary duty, misappropriation of company funds, conspiracy to defraud and unjust enrichment, and sought judicial dissolution of the Academy. On June 25, 2008, the debtor answered and filed counterclaims. In his answer, the debtor admitted that he was a 50% owner of the Academy. In his counterclaims, debtor alleged breach of contract and breach of fiduciary duty and alleged damages of at least $25,000.

On September 12, 2008, the debtor filed a chapter 7 bankruptcy petition. Debtor's Schedule B omitted several of the debtor's assets, including his interest in his IRA, his interest in the Academy and his interest in his counterclaim. In addition, Schedule I listed the debtor as unemployed even though he had accepted a job at Smith and Nephew prior to the petition date. On December 3, 2010, the debtor amended his schedules to include his interest in his IRA. However, he never took any action to correct the other omissions in his schedules.

## LAW AND ANALYSIS

Section 727 is construed liberally in favor of the debtor. Keeney v. Smith (In re Keeney), 227 F.3d 679, 683 (6th Cir. 2000). The elements of a violation of section 727 must be proven by a preponderance of the evidence to merit denial of discharge. Id. The Court finds that the UST has met its burden with regard to section 727(a)(2) and (4).

A. The debtor transferred property with the intent to defraud creditors.

Section 727(a)(2) provides in pertinent part:

> The court shall grant the debtor a discharge, unless . . . the debtor, with intent
> to hinder, delay, or defraud a creditor or an officer of the estate charged with
> custody of property under this title, has transferred, removed, destroyed,
> mutilated, or concealed, or has permitted to be transferred, removed,
> destroyed, mutilated, or concealed . . . property of the debtor, within one year

4

before the date of the filing of the petition . . . .

This section encompasses two elements: (1) a disposition of property, such as concealment, and (2) a subjective intent on the the debtor's part to hinder, delay, or defraud a creditor through the act of disposing of the property. Keeney, 227 F.3d at 683.

The Court finds that the debtor concealed income with the intent to defraud Mr. Tolerton and the Academy during the year prior to the filing date of the petition. The debtor presented no plausible explanation for the existence of the DBA account to counter the obvious inference that he used it to embezzle money. In addition, the Court found Frank Monaco to be a credible witness and his report suggests that the debtor was stealing money from the Academy in other ways. When viewed together, the evidence that the debtor embezzled money from the Academy is overwhelming. Regardless of any other evidence or argument, there was a total lack of any credible explanation relating to the DBA account and the source of deposit.

   B. *The debtor made a false oath on his petitions.*

Section 727(a)(4) provides in pertinent part:

> The court shall grant the debtor a discharge, unless . . .the debtor knowingly and fraudulently, in or in connection with the case. . . made a false oath or account . . . .

In order to deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. Keeney, 227 F.3d at 685. Courts may deduce fraudulent intent from all the facts and circumstances of the case. Id. at 686. However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence Id. The subject of a false oath is material if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. Id.

In this case, all five elements are met. First, the debtor signed his bankruptcy petition under oath. Second, the debtor acknowledged at trial that his petitions were false with regard to his interest in his IRA, his interest in the Academy, and his interest in his counterclaim. Third, the knew about his interest in the Academy, his IRA, and his counterclaim at the time his initial petition was filed as evidenced by the pleadings in the state court litigation and his testimony during his meeting of the creditors. At a minimum, it is absolutely clear that he knew about his interest in the Academy and his state court counterclaim when his *amended* schedules were filed following the meeting of the creditors. Fourth, the circumstances of the case strongly suggest that the debtor

5

omitted his interests in the Academy and his counterclaim with the intent of avoiding inquiries into his underhanded business dealings. Fifth, debtor's omissions are clearly material because they relate to the discovery of assets of the estate.

Accordingly, debtor's discharge must be denied.

An order will issue with this opinion.

#     #     #

Service List:

Jeffrey Allen Wallace
2960 Ashwood Drive
Alliance, OH 44601

Lisa M. Barbacci
P.O. Box 1299
Medina, OH 44258-1299

Chris G Manos
2745 Nesbitt Ave
Akron, OH 44319

Richard V Zurz, Jr
1 Cascade Plaza
Suite 2210
Akron, OH 44308

Lisa M. Barbacci
P.O. Box 1299
Medina, OH 44258-1299

.

6